UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

COGNAC FERRAND S.A.S.,

                                          Petitioner and
                                          Cross-Respondent,

                          -v-

MYSTIQUE BRANDS LLC,

                                          Respondent and
                                          Cross-Petitioner.

---

20 Civ. 5933 (PAE)

OPINION &
ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves several motions relating to the enforcement of an arbitral award.
Cognac Ferrand S.A.S. ("Ferrand") has filed a petition to vacate an arbitral award pursuant to the
New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, 9 U.S.C. §§ 201–208 ( "New York Convention").
Ferrand argues that the arbitrator erred by finding its adversary, Mystique Brands LLC
("Mystique"), the prevailing party in the arbitration and, as a result, wrongly awarded Mystique
nearly $2 million in fees and costs.  Mystique opposes that petition and has cross-petitioned to
confirm the award.  Mystique also seeks sanctions, under both 28 U.S.C. § 1927 and Federal
Rule of Civil Procedure 11, against Ferrand for pursuing this action.  Last, and most recently,
Ferrand has sought a preliminary injunction restraining Mystique from seeking to enforce the
award in France, where Ferrand is located, pending the outcome of this case.

For the reasons that follow, the Court grants Mystique's cross-petition to confirm the
award and denies Ferrand's petition to vacate it; denies Mystique's requests for sanctions; and
denies Ferrand's motion for a preliminary injunction as moot.

I.     **Background**[1]

A.     **Factual Background**

This dispute arises from an agreement between the parties involving the importation and marketing of Ferrand's cognac in the United States.  Ferrand is a French company that produces and sells various liquors and spirits.  Award ¶ 1.  Mystique is a Delaware LLC that imports and markets liquors and spirits in the United States.  *Id.* ¶ 3.  In 2008, the parties executed a contract in which Ferrand granted Mystique the five-year exclusive right to import and market certain products in the United States.  *Id.* ¶¶ 57, 70; Ferrand Pet. ¶ 8.  In that agreement, Mystique agreed to purchase certain minimum amounts of Ferrand's products each year, and to enter into a marketing agreement with the musical artist Calvin Brodus, a/k/a "Snoop Dogg," for the promotion of those products, the costs of which Mystique would pay.  Award ¶¶ 58–61.  The agreement granted Ferrand the right to terminate the agreement if Mystique became insolvent or filed a bankruptcy petition, or if Mystique committed a "material breach" that it failed to cure within 30 days.  *Id.* ¶ 62.  The agreement also contained the following arbitration clause:

---

[1] The Court draws its account of the facts from the parties' pleadings and submissions in support of and in opposition to the pending petitions and motions, including Ferrand's amended petition to vacate, Dkt. 14 ("Ferrand Pet."), and memorandum of law in support, Dkt. 15 ("Ferrand Mem."); Mystique's memorandum in opposition and in support of its cross-motion to confirm, Dkt. 18 ("Mystique Arb. Mem."); Ferrand's memorandum in opposition to Mystique's motion to confirm and in further support of its motion to vacate, Dkt. 25 ("Ferrand Resp."); Mystique's reply in further support of its motion to confirm, Dkt. 28 ("Mystique Arb. Reply"); and the arbitral award, Dkt. 13 ("Freidberg Decl."), Ex. 1 ("Award").  The Court has also considered the declaration of Barry J. Friedberg, Esq., in support of Ferrand's petition to vacate, *see* Friedberg Decl., and attached exhibits; the declaration of Malik Havalic, Esq., in support of Mystique's cross-petition, Dkt. 19 ("First Havalic Decl."), and attached exhibits; the declaration of Pierre N. Abitbol, Esq., in further support of Ferrand's petition, Dkt. 26 ("Abitbol Decl."), and attached exhibits; and Mr. Havalic's reply declaration, Dkt. 28-1 ("Second Havalic Decl."), and attached exhibits.  In considering Mystique's motion for sanctions, the Court has further considered the submissions in support of and in opposition to that motion, including the declaration of John Fellas, Esq., Dkt. 23-1 ("Fellas Decl."), and attached exhibit.  Last, the Court has considered the parties' respective submissions in support of and in opposition to Ferrand's request for a preliminary injunction.  *See* Dkts. 31–35.

21.1 <u>Arbitration</u>.  Any dispute or claim arising out of or related to this Agreement, or the interpretation, making, performance, breach, validity, or termination hereof, . . . shall be finally settled by binding arbitration . . . by one (1) arbitrator appointed in accordance with the AAA Rules.  The arbitration shall be held in New York . . . .  The final judgment of the arbitrator shall be in the form of a reasoned, written opinion . . . .  The arbitrator may award to the prevailing party, if any, as determined by the arbitrator, all of its costs and fees, including, without limitation, AAA administrative fees, arbitrator fees, travel expenses, out-of-pocket expenses . . . , witness fees, and reasonable attorneys' and other professional fees.

Friedberg Decl., Ex. 2 ("Agreement") § 21.1.  The Agreement denied the arbitrator the power to "add or detract" from the Agreement or to award punitive damages.  *Id.* § 21.2.

In the first year of the agreement, Mystique met its minimum-purchase obligations and entered into an endorsement agreement with Snoop Dogg, under which Mystique was to pay him royalties on product sales.  *Id.* ¶¶ 71–72.  But by 2009, Mystique's business began to deteriorate, and Ferrand learned that Mystique had failed to make royalty payments owed to Snoop Dogg.  *Id.* ¶¶ 73–76.  In May 2009, Ferrand terminated the agreement, citing Mystique's purported insolvency and unpaid Snoop Dogg royalties.  *Id.* ¶ 77; Ferrand Pet. ¶ 8.

## B.    Arbitration

In March 2010, Mystique commenced an arbitration against Ferrand before the International Centre for Dispute Resolution ("ICDR") in New York.  Award ¶ 10; Ferrand Pet. ¶ 9.  Mystique alleged that Ferrand had improperly terminated their agreement and sought damages of $238,000.  Award ¶ 10; Ferrand Pet. ¶ 11.[2]  Ferrand defended its termination as proper given Mystique's insolvency, and asserted counterclaims alleging breach of contract, fraud, and negligent misrepresentation.  Award ¶ 10.  It sought $4.5 million in damages, including for Mystique's failure to keep purchasing products from Ferrand after the agreement's termination, and Ferrand's resulting lost profits.  *Id.* ¶¶ 10–11; Ferrand Pet. ¶ 11.

---

[2] Mystique later amended its claims to seek up to nearly $8 million.  Award ¶ 11.

Both parties moved for summary judgment dismissing some or all of the other's claims. In June 2012, then-arbitrator Philip D. O'Neill, Jr. (the "First Arbitrator"), issued an interim award granting Ferrand's motion and denying Mystique's.  Award ¶¶ 13–18.  The interim award held that Mystique was undisputedly insolvent and had failed to make the Snoop Dogg royalty payments when Ferrand terminated their agreement in May 2009, and that Ferrand therefore did not breach the contract by doing so.  *Id.* ¶ 14.  It also rejected Mystique's affirmative defenses, denied its motion for summary judgment on Ferrand's breach-of-contract claim, and directed the case to proceed to an evidentiary hearing on that and most of Ferrand's other counterclaims.  *Id.* ¶¶ 14–18.  That hearing was to take place in April 2013.  *Id.* ¶ 20.

In January 2013, however, Mystique filed for Chapter 7 bankruptcy.  *Id.* ¶ 21.  As a result, the arbitration was automatically stayed pending the bankruptcy proceedings, and the ICDR placed the arbitration "in abeyance."  *Id.* ¶¶ 22–23.[3]  In March 2013, Ferrand sought to lift the stay.  In June 2013, however, it withdrew that request after the presiding bankruptcy judge stated at a hearing that he was disinclined to grant it.  Ferrand Pet. ¶ 16; Mystique Arb. Mem. at 6–7.  Four days later, Ferrand emailed the ICDR, stating that Ferrand's withdrawal of that request "effectively ends the arbitration proceeding" and requesting the return of "any unused portion of the fees advanced by Cognac Ferrand."  First Havalic Decl., Ex. D.  In November 2013, the ICDR wrote to the parties stating that, unless it received from them any written reasons for the case to remain open, it would "close its file."  Friedberg Decl., Ex. 15.  In January 2014, having not received a response, the ICDR did so.  *See* Abitbol Decl., Ex. 27 ("ICDR Email").

---

[3] Ferrand alleges that, given Mystique's lack of assets and ineligibility for discharge under applicable law, Mystique's sole reason for filing its Chapter 7 petition was to derail the arbitration.  Ferrand Pet. ¶ 16.

Nearly four years later, in October 2017, the bankruptcy proceeding closed and the automatic stay lifted.  Award ¶ 28.  On December 1, 2017, Ferrand sought to reinstate the arbitration proceedings and schedule an evidentiary hearing on its counterclaims.  *Id.* ¶ 29.  On December 5, 2017, the ICDR responded that the matter "has been closed administratively on or around January 24, 2014"; that the ICDR, in accord with its standard practices, had destroyed all associated files after that closing; and that the only way to continue would be to file a new notice of arbitration, with an appropriate filing fee.  ICDR Email at 1; *see* Award ¶ 29.  On December 11, 2017, Ferrand followed those instructions, styling its pleading in the new matter (which bore a new case number) as "Amended and Restated Counterclaims."  *See* Friedberg Decl., Ex. 18.  The parties then selected a new arbitrator—Claudia T. Salomon (the "Arbitrator")[4]—who thereafter oversaw the arbitration.  Ferrand Pet. ¶ 19.

On October 1, 2018, after submissions from the parties and a hearing, the Arbitrator issued an order resolving several preliminary issues pertaining to the posture of the arbitration.  That order held, *inter alia*, that the 2012 interim award did not establish Mystique's liability as to Ferrand's counterclaims, but only that a hearing was necessary to make that determination.  Award ¶ 35.  The order also noted that the present proceeding was "effectively a new arbitration," but that Ferrand's decision not to pursue the first arbitration did not preclude it from continuing with its claims in the new proceeding.  Friedberg Decl., Ex. 20 ¶¶ 9, 48.

---

[4] Ferrand suggests that Mystique acted improperly in seeking a new arbitrator in 2017 rather than consenting to have the First Arbitrator assigned to the new case.  Ferrand is correct that the ICDR stated it was "open to the idea of having Mr. O'Neill reappointed if this may find both sides[] in agreement."  ICDR Email at 1.  But Mystique, evidently, was not in agreement.  *See* Abitbol Decl., Ex. 33 ("Mystique will not consent to using [O'Neill] as an arbitrator.").  And Ferrand does not identify any impropriety in the process by which Salomon was selected.  Accordingly, there is no basis to find anything amiss from the fact that, after the five-year hiatus occasioned by Mystique's bankruptcy, a new arbitrator was selected.

On December 6, 2018, Ferrand filed its "Second Amended and Re-Stated Counterclaims." *Id.* ¶ 36. On January 14, 2019, Mystique filed an answer and counterclaims. *Id.* On March 22, 2019, Ferrand answered Mystique's counterclaims. *Id.* Ferrand claimed that Mystique had breached their contract by failing to make the requisite purchases and failing to make Snoop Dogg's royalty payments. *Id.* ¶ 50. It estimated that its damages were "in excess of $10,000,000," based on lost profits resulting from those breaches and the accrual of prejudgment interest. *Id.* ¶ 55. Mystique argued that it had complied with all of its minimum-purchase obligations until Ferrand terminated the agreement in 2009 and that its failure to pay $35,000 in royalty payments to Snoop Dogg did not cause Ferrand damages. *Id.* ¶¶ 51–52. As relief, it sought the dismissal of Ferrand's claims, an award finding Ferrand liable for the breach of the implied covenant of good faith and fair dealing and for tortious interference, and attorneys' fees and costs. *Id.* ¶ 56. In December 2019, after discovery, the Arbitrator held a three-day hearing in New York. *Id.* ¶ 47. On February 7, 2020, the parties submitted cost applications, which Mystique supplemented a week later. *Id.* ¶ 48.

On May 1, 2020, the Arbitrator issued a 47-page final Award, holding in Mystique's favor. *See id.* On the merits, the Award held that Mystique did not breach its minimum-purchase obligations. *Id.* ¶ 86. It also rejected Ferrand's breach-of-contract claim for Mystique's failure to pay Snoop Dogg because Ferrand had not offered evidence of damages or causation. *Id.* ¶¶ 124–127, 139–143. It also held that Mystique had not repudiated the agreement, *id.* ¶¶ 95–102, and that Mystique's insolvency did not constitute a material breach, *id.* ¶¶ 107–112. Accordingly, the Award dismissed all of Ferrand's claims.[5]

---

[5] Because Mystique sought only nominal damages for its counterclaims, which the Award noted "are the same as its affirmative defenses," the Award did not address those claims. Award ¶ 144 & n.156. Thus, neither party obtained any relief on the merits.

Last, the Award addressed the issue of attorneys' fees and costs.  *Id.* ¶¶ 145–156.

Mystique sought fees and costs only from the arbitral proceedings since 2018, and argued that no

fees were available from the earlier arbitration.  *See id.* ¶¶ 146–147; Friedberg Decl., Ex. 26 at 2–3.

In total, it sought $1,873,490.80 plus ICDR fees and expenses.  Award ¶ 146.  Ferrand sought

fees and costs from proceedings before both the first and second arbitrators.  *Id.* ¶ 145; Friedberg

Decl., Ex. 27.  In total, it sought $989,433.75 plus ICDR fees and expenses.  Award ¶ 145.

The Award first set forth the provision of the parties' contract governing the award of

fees and costs:  "Section 21.1 of the Agreement provides that '[t]he arbitrator may award to the

prevailing party, if any, as determined by the arbitrator, all of its costs and fees . . . .'"  *Id.* ¶ 148

(quoting Agreement § 21.1).  It then stated that "New York does not adopt a formalistic approach

to determining who is the prevailing party but instead requires the Arbitrator to consider 'the true

scope of the dispute litigated' and compare that with 'what was achieved within that scope.'"  *Id.*

¶ 150 (quoting *Excelsior 57th Corp. v. Winters*, 227 A.D.2d 146, 147 (1st Dep't 1996)).  And

because "Ferrand's claim fail[ed] entirely," the Award concluded that "Mystique is the

prevailing party."  *Id.* ¶ 152.

In support of that holding, the Award noted that Ferrand had pursued a claim for more

than $10 million arising from missed payments of only $35,000, yet had received nothing.  This

was attributable, the Award stated, to Ferrand's

> skirting over the fundamental questions of liability and essential elements of
> causation, shifting its theories when it became apparent that its original claims did
> not withstand scrutiny, and then failing to properly substantiate its damages claim,
> relying on a less than independent expert witness, defending an outdated and
> inadequate analysis.

*Id.* ¶ 153.  The Award thus granted Mystique all its fees and costs, *i.e.*, $1,960,950, and denied

Ferrand's request for fees and costs associated with both the current proceedings and the earlier

proceedings before the First Arbitrator.  *Id.* ¶¶ 155 & n.158, 156–157.

### C.      This Action

#### 1.      The Cross-Petitions to Confirm and Vacate the Arbitral Award

On July 30, 2020, Ferrand filed, in this Court, a petition to vacate the Award and a memorandum of law in support, which it re-filed, as amended, on September 5, 2020.  *See* Dkts. 1, 12; Ferrand Pet.; Ferrand Mem.  Ferrand's petition does not challenge the Award's holdings as to the merits of its or Mystique's claims; it seeks solely to vacate the award of fees and costs to Mystique.  On September 9, 2020, Mystique filed a cross-petition to confirm the Award and filed a memorandum of law in support, *see* Mystique Arb. Mem., and the first Havalic declaration.  It also moved for sanctions pursuant to 28 U.S.C. § 1927.  *Id.*  On October 7, 2020, Ferrand opposed Mystique's motion to confirm and for § 1927 sanctions, *see* Ferrand Resp., and filed the Abitbol declaration.  On October 30, 2020, Mystique filed a reply, Mystique Arb. Reply, and the second Havalic declaration.

#### 2.      Mystique's Motion for Rule 11 Sanctions

On October 7, 2020, Mystique separately moved—as an alternative to its motion for sanctions under § 1927—for sanctions under Federal Rule of Civil Procedure 11, Dkt. 22, and filed a memorandum of law in support, Dkt. 23 ("Mystique Rule 11 Mem."), as well as the Fellas declaration.  On October 30, 2020, Ferrand opposed Mystique's Rule 11 motion.  Dkt. 29 ("Ferrand Rule 11 Mem.").  On November 9, 2020, Mystique filed a reply in further support of its request for such sanctions.  Dkt. 30 ("Mystique Rule 11 Reply").

#### 3.      Ferrand's Motion for a Preliminary Injunction and TRO

On January 4, 2021, Ferrand sought a preliminary injunction restraining Mystique's parallel efforts to enforce the Award in France.  Dkt. 31.  In support, it filed a memorandum of law, Dkt. 35 ("Ferrand PI Mem."), and several declarations, Dkts. 32–34, with attached exhibits.  The same day, the Court set a briefing schedule on that motion.  Dkt. 36.  On January 6, 2021,

Ferrand moved for a TRO, on the basis that French authorities served on it an order authorizing seizure of its assets.  Dkts. 39–42.  On January 7, 2021, the Court, by order, denied the TRO application on the ground that Ferrand had failed to show a substantial question going to the merits of its claims.  Dkt. 44.  The Court's order stated that it would soon issue a decision resolving the pending petitions to confirm and vacate the arbitral Award, which would expand on the Court's assessment as to the merits of Ferrand's claims.  *Id.* at 3.  This is that decision.

## II.    Discussion

The Court first addresses the parties' cross-petitions to confirm and vacate the award of fees and costs to Mystique.  The Court then addresses Mystique's applications, under both § 1927 and Rule 11, for sanctions against Ferrand.  Last, the Court addresses Ferrand's motion for a preliminary injunction.

### A.    Petitions to Confirm and Vacate the Arbitral Award

#### 1.    Applicable Legal Principles

Arbitral awards are not self-enforcing.  Rather, they "must be given force and effect by being converted to judicial orders by courts."  *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006).

Chapter 2 of the FAA, 9 U.S.C. §§ 201–208, which codifies the New York Convention, governs arbitration agreements that arise from a "legal relationship, whether contractual or not, which is considered as commercial," unless that relationship is "entirely between citizens of the United States" and is otherwise domestic in nature.  9 U.S.C. § 202.  Applying § 202, the Second Circuit has held that where an agreement to arbitrate "involve[s] parties domiciled or having their principal place of business outside [the United States]," that agreement is governed by the Convention.  *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997) (quoting *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 932 (2d Cir. 1983)).  Because Ferrand

is incorporated outside the United States, and this dispute arises out of agreements to which it is a party, the New York Convention governs the petitions before the Court. *See Farrell v. Subway Int'l, B.V.*, No. 11 Civ. 08 (JFK), 2011 WL 1085017, at *1 (S.D.N.Y. Mar. 23, 2011) (New York Convention governs arbitration agreements involving "at least one foreign party").

Where, as here, arbitration took place in the United States, Chapter 2 and the Convention "allow a court in the country under whose law the arbitration was conducted to apply domestic arbitral law, in this case the FAA, to a motion to set aside or vacate that arbitral award." *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 21; *see also In re Arb. Between Halcot Navigation Ltd. P'ship & Stolt-Nielsen Transp. Grp.*, 491 F. Supp. 2d 413, 420 (S.D.N.Y. 2007) (if arbitration is "was rendered in the United States, this Court can also look to domestic arbitration law, specifically the FAA," in deciding whether to confirm or vacate).

The FAA provides a "streamlined" process for a party seeking a "judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). Section 9 provides:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected . . . .

9 U.S.C. § 9. "It is well established that courts must grant an [arbitral] decision great deference." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003). The confirmation of an arbitral award generally is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *D.H. Blair & Co.*, 462 F.3d at 110 (citation omitted). "Only a barely colorable justification for the outcome reached by the arbitrators" is required to confirm an award upon a timely petition to do so. *Id.* (citation omitted).

Accordingly, review of an arbitral award by a district court "is 'severely limited' so as not unduly to frustrate the goals of arbitration, namely to settle disputes efficiently and avoid long and expensive litigation." *Salzman v. KCD Fin., Inc.*, No. 11 Civ. 5865 (DLC), 2011 WL 6778499, at *2 (S.D.N.Y. Dec. 21, 2011) (quoting *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997)). "A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *D.H. Blair & Co.*, 462 F.3d at 110; *see STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 74 (2d Cir. 2011) (similar); *Sea Shipping Inc. v. Half Moon Shipping LLC*, 848 F. Supp. 2d 448, 454 (S.D.N.Y. 2012) ("The party moving the court to vacate an arbitral award 'must clear a high hurdle,' and bears a 'heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law.'" (first quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010); and then quoting *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004))).

The FAA sets out the limited circumstances under which a district court may vacate an arbitral award. These include, *inter alia*, "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). However, the Second Circuit has "consistently accorded [§ 10(a)(4)] 'the narrowest of readings.'" *Anthony v. Affiliated Comput. Servs., Inc.*, 621 F. App'x 49, 50–51 (2d Cir. 2015) (summary order) (quoting *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011)). "'[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' a court's conviction that the arbitrator has 'committed *serious* error' in resolving the disputed issue 'does not suffice to overturn his decision.'" *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009) (emphasis added) (quoting *United Paperworkers Int'l Union AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

11

An arbitral award may also be vacated if it exhibits a "manifest disregard" of the law, *Tully Constr. Co. v. Canam Steel Corp.*, 684 F. App'x 24, 26 (2d Cir. 2017) (summary order), or "where the arbitrator's award is in manifest disregard of the terms of the [parties'] agreement," *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 23; *see id.* at 25 ("We apply a notion of 'manifest disregard' to the terms of the agreement analogous to that employed in the context of manifest disregard of the law."). "[T]he manifest disregard standard, rather than substantially broadening the grounds for vacatur, largely operates as a judicial gloss on the specific grounds for vacatur enumerated in section 10 of the FAA." *Benihana, Inc. v. Benihana of Tokyo, LLC*, No. 15 Civ. 7428 (PAE), 2016 WL 3913599, at *10 (S.D.N.Y. July 15, 2016) (citation omitted). Accordingly, manifest disregard "means more than error or misunderstanding with respect to the law." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986).

To show manifest disregard, the moving party bears the heavy burden of showing that (1) "the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators," (2) "the law was in fact improperly applied, leading to an erroneous outcome," and (3) "the arbitrator . . . kn[ew] of its existence, and its applicability to the problem before him." *Duferco*, 333 F.3d at 390; *see Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 222 (2d Cir. 2002) ("[V]acatur for manifest disregard of a commercial contract is appropriate only if the arbitral award contradicts an express and unambiguous term of the contract or if the award so far departs from the terms of the agreement that it is not even arguably derived from the contract."). Vacating an arbitral award for manifest disregard "is a doctrine of last resort," reserved for "those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply." *Duferco*, 333 F.3d at 389. An arbitral award should not be subject to vacatur "because of a

simple error in law or a failure by the arbitrators to understand or apply it." *Id.* Rather, a court should only vacate an award for manifest disregard "when a party clearly demonstrates that the [arbitrator] *intentionally defied* the law." *STMicroelectronics*, 648 F.3d at 78 (emphasis added) (citation omitted).

A petition to confirm an arbitral award is "treated as akin to a motion for summary judgment." *D.H. Blair & Co.*, 462 F.3d at 109. To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (citation omitted). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003). Where "[t]here is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law[,] . . . a court must grant an order to confirm an arbitration award upon the timely application of a party." *Herrenknecht Corp. v. Best Rd. Boring*, No. 06 Civ. 5106 (JFK), 2007 WL 1149122, at *2 (S.D.N.Y. Apr. 16, 2007) (citing *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)).

### 2. Application

Ferrand's challenge to the Award is a narrow one. Ferrand does not dispute the Award's resolution of any merits issue. Nor does it contest the amount or calculation of fees and costs that were awarded. Rather, it argues mainly that the Arbitrator erred in deciding that Mystique was the "prevailing party" under the parties' agreement, and was therefore entitled to its fees and costs, while Ferrand was not. The only permissible conclusion, Ferrand contends, was that there

was *no* prevailing party because the First Arbitrator dismissed Mystique's claims and the

Arbitrator dismissed Ferrand's. *See, e.g.*, Ferrand Mem. at 13 ("Neither Mystique nor Ferrand

obtained any relief at all . . . . As a result, neither party was a prevailing party and Mystique was

not entitled to an award of attorneys' fees."). Alternatively, Ferrand argues that, even if

Mystique prevailed in the second arbitration, the Arbitrator should have held that Ferrand

prevailed in the first. *Id.* Ferrand contends that the Arbitrator, by finding Mystique alone to

have prevailed: (1) exceeded her authority by disregarding the proceedings before the First

Arbitrator; (2) manifestly disregarded the proceedings before the First Arbitrator and certain

terms of the contract by ignoring whether there was "any" prevailing party and misconstruing the

scope of the "dispute"; and (3) failed to render a final and definite award by not addressing

Ferrand's request for fees and costs arising from the proceedings before the First Arbitrator.

The Court is unpersuaded by each argument.

### a.    The Arbitrator Did Not Exceed Her Authority

Ferrand argues that the Arbitrator exceeded her authority under the parties' agreement by

"disregard[ing] half of the parties' dispute in determining whether there was any prevailing party

at all." Ferrand Mem. at 14–15. It argues that, by training her focus solely on what Ferrand now

terms the "second phase" of a single arbitration proceeding, "sub-divid[ing]" the parties' dispute

into two separate arbitrations, and failing to consider whether any party "prevailed" in the full

context of the arbitral proceedings conducted between 2010 and 2020, the Arbitrator strayed

from interpreting the terms of the contract. *Id.*; Ferrand Resp. at 7–9.

Notwithstanding Ferrand's characterizing this aspect of the Award as *ultra vires*, its

claim falls far short of clearing the "high hurdle" set by § 10(a)(4). *Stolt-Nielsen*, 559 U.S.

at 671. Where an arbitral award is "even arguably construing or applying the contract and acting

within the scope of his authority," *United Paperworkers*, 484 U.S. at 38, the Court will "uphold a

challenged award as long as the arbitrator offers a 'barely colorable justification for the outcome reached,'" *ReliaStar Life Ins. Co.*, 564 F.3d at 86 (quoting *Banco de Seguros del Estado v. Mut. Marine Off., Inc.*, 344 F.3d 255, 260 (2d Cir. 2003)).  "It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable." *Stolt-Nielsen*, 559 U.S. at 671 (alterations in original) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam)).

The Arbitrator did not come close to doing so here.  The governing arbitration clause expressly gave the Arbitrator the authority to "award to the prevailing party, if any, *as determined by the arbitrator*, all of its costs and fees," and did not impose any textual limit on that authority.  Agreement § 21.1 (emphasis added).  It is therefore indisputable that the arbitrator "had the power" to reach the issues of which party, if either, had prevailed, and what that party's costs and fees were. *Banco de Seguros*, 344 F.3d at 262 (citation omitted); *see id.* ("Where an arbitration clause is broad, as here, arbitrators have the discretion to order remedies they determine appropriate, so long as they do not exceed the power granted to them by the contract itself.").[6]  Further, the Arbitrator's judgment that Ferrand's failure to sustain its claims

---

[6] The cases on which Ferrand relies on this point do not assist it.  In two, the Second Circuit *rejected* a challenge to the arbitral award at issue.  *See ReliaStar Life Ins. Co.*, 564 F.3d at 86–88 (reversing vacatur of award where arbitrator awarded attorneys' fees despite lack of explicit authority to do so); *Banco de Seguros*, 344 F.3d at 262–63 (affirming confirmation of arbitral ruling on pre-hearing security even though the parties' agreement did not give arbitrator express authority to address such security).  In the third, the Supreme Court rejected an arbitral panel's decision to permit classwide arbitration absent express contractual authority to do so where the panel had viewed itself as having "the authority of a common-law court to develop what it viewed as the best rule to be applied," and the conclusion was "inescapable that the panel simply imposed its own conception of sound policy." *Stolt-Nielsen*, 559 U.S. at 673–75.  Here, to the contrary, the contract could not be clearer that the arbitrator had authority to decide what she did: whether there was a prevailing party, who that party was, and whether to award that party all of its fees and costs.

for more than $10 million in damages rendered Mystique the prevailing party provided, at the very least, a "barely colorable justification" for the outcome reached. *Id.* at 260.  Ferrand's complaint on this point thus amounts to a mere substantive disagreement with the Arbitrator's reasoning and ultimate determination.  That does not afford a valid basis to overturn the Award. Even if the Arbitrator's determination that Ferrand was the lone prevailing party were a "serious error" in light of the fact that Mystique's claims, too, were dismissed, the Court remains obliged to confirm the Award. *ReliaStar Life Ins. Co.*, 564 F.3d at 86.

> b.   *The Arbitrator Did Not Act in Manifest Disregard*

For the most part, Ferrand's argument that the Arbitrator acted in manifest disregard reprises its argument that she exceeded her authority.  Ferrand argues that the Arbitrator manifestly disregarded the terms of the parties' agreement when she failed properly to construe (1) the term "dispute," by treating the parties' claims—which all arose from Ferrand's termination of the parties' agreement—as involving two distinct "disputes"; and (2) the term "prevailing party, if any," by failing to consider the possibility that neither Ferrand nor Mystique prevailed in the overarching dispute between them.  Ferrand Mem. at 15–18; Ferrand Resp. at 10–12.

These arguments do not contend with, and for multiple reasons do not satisfy, the Second Circuit's stringent "manifest disregard" standard. *See, e.g.*, *Duferco*, 333 F.3d at 390.

First, Ferrand's claim that the Arbitrator manifestly disregarded the parties' agreement by focusing on the failure of its claims, while ignoring the 2012 dismissal of Mystique's claims, is meritless.  That argument faults the Arbitrator for disregarding or underweighting certain evidence in making the prevailing-party determination.  But disregard or discounting of evidence is not a basis for vacatur. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 91 (2d Cir. 2008) ("We do not, however, 'recognize manifest disregard of the *evidence* as proper

ground for vacating an arbitrator's award.'" (quoting *Wallace*, 378 F.3d at 193)), *rev'd on other grounds*, 559 U.S. 662.  And even if a lapse of this nature could support vacatur in some circumstances, it does not do so here.  *See Duferco*, 333 F.3d at 389 (vacatur unavailable based on "a simple error of law or a failure by the arbitrators to understand or apply it").  Instead, for a finding of manifest disregard to be warranted, the Arbitrator must have intentionally disregarded something pertinent to the parties' dispute.  *Id*.  Ferrand does not allege, let alone establish, such defiance here.

Second, to the extent Ferrand faults the Arbitrator for, ostensibly, misapplying terms within the parties' agreement, Ferrand has not shown that such errors met the high standard of "manifest disregard."  Ferrand argues that the Arbitrator misapplied the term "dispute" insofar as she failed to treat the two phases of the proceedings here as a single "dispute."  *See* Ferrand Mem. at 16 ("[T]he Successor Arbitrator inexplicably veered to treating the arbitration as if there were two entirely separate disputes.").  But Ferrand does not identify any part of the Agreement that instructs an arbitrator to construe the term "dispute" holistically in making the prevailing-party determination, *Duferco*, 333 F.3d at 390, let alone show that the Arbitrator knew of clear contract terms to this effect yet "intentionally defied" it, *STMicroelectronics*, 648 F.3d at 78; *see Merrill Lynch*, 808 F.2d at 933.  In all events, the Arbitrator's determination of the scope of the "dispute" involves, at most, an interpretation of the term "dispute" and the application of that term to facts—an error as to which does not provide a basis for vacating an arbitral award for manifest disregard.  *See, e.g.*, *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 25.  Moreover, in its own costs submissions Ferrand itself cast the two proceedings as separate arbitrations.  *See* Friedberg Decl., Ex. 27 at 1 (referring to "the first arbitration" and "the second arbitration").

That the Arbitrator heeded Ferrand's example in this respect underscores that, if such were error, it was neither manifest nor an intentional act in defiance of the parties' agreement.

Ferrand next argues that the Arbitrator disregarded the term "if any" in section 21.1 of the parties' agreement by deciding that there necessarily *was* a prevailing party.  Ferrand notes that this provision contemplates that, in some circumstances, there may not be such a party.  While Ferrand is correct in so reading section 21.1, that observation does not make the Arbitrator's finding that Mystique was the prevailing party erroneous, let alone an error rising to the level of manifest disregard.  The Arbitrator here did not explicitly construe the agreement to *require* that a prevailing party be found.  Instead, finding that there *was* a prevailing party (and that it was Mystique, based on Mystique's having defeated, before the Arbitrator, all of Ferrand's claims), the Award did not have occasion to construe the contours of the term "if any" in section 21.1. Award ¶ 152.  Ferrand's gripe that the Arbitrator found its adversary, and not it, to have prevailed merely takes issue with the application of contract terms to a particular controversy.  In Ferrand's view, the Arbitrator ought to have seen its earlier victory in defeating Mystique's claims as offsetting, in the context of the prevailing-party analysis, Mystique's success.  But whatever the persuasive force, or not, of that argument, the Arbitrator's application of a contract term to the facts is not a basis for vacating an arbitral award.  Indeed, even had the Award errantly interpreted the agreement to require that a prevailing party be found in all cases, such an interpretation would not have merited vacatur. *See Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 25 ("Interpretation of these contract terms is within the province of the arbitrator and will not be overruled simply because we disagree with that interpretation.").  Here, the Arbitrator explained the basis for finding Mystique to be the prevailing party, noting that, before her, Mystique had beaten back all of Ferrand's claims.  And "if the arbitrator has provided even a

barely colorable justification for his or her interpretation of the contract, the award must stand."
*Westerbeke*, 304 F.3d at 222.

In the end, Ferrand takes issue with the Award because, in its view, the Arbitrator, in deeming Mystique the prevailing party, did not give Ferrand credit, or sufficient credit, for winning the dismissal of Mystique's claims in 2012. That is a coherent and colorable critique. Were this Court reviewing the issue *de novo*, Ferrand's argument that, viewing the parties' legal dispute as a whole, neither party prevailed, might carry the day. But a district court asked to set aside an arbitral award for manifest disregard has far less latitude. Even assuming *arguendo* that Ferrand's application here of the contractual term "prevailing party" were the more persuasive, this case falls far short of being one of "those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent but where none of the provisions of the FAA apply." *Duferco*, 333 F.3d at 389; *see Merrill Lynch*, 808 F.2d at 933 (an arbitrator's mere "error or misunderstanding with respect to the" law is insufficient to vacate award as a "manifest disregard"). The Supreme Court has repeatedly reminded arbitral losers, in fact, that in electing arbitration over litigation in court, they forego plenary review of the trier's legal rulings:

> The potential for . . . mistakes is the price of agreeing to arbitration. As we have held before, we hold again: "It is the arbitrator's construction [of the contract] which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." The arbitrator's construction holds, however good, bad, or ugly.

*Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 572–73 (2013) (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960)) Accordingly, the Court rejects Ferrand's claim that the Award was made in manifest disregard of any aspect of the parties' agreement.

c.      *The Award Is Final and Definite*

Last, Ferrand argues that the Award is not "final and definite" because it, ostensibly,

failed adequately to dispose of Ferrand's request for fees and costs associated with proceedings

before the First Arbitrator.  *See* Ferrand Mem. at 19–21; Ferrand Resp. at 3–6.  In support,

Ferrand notes that the Award states that "the Arbitrator therefore does not need to address the

issue of whether Ferrand would be entitled to its fees and costs in the First Arbitration," in light

of its award to Mystique of all of its fees and costs in the second.  *See* Ferrand Mem. at 20

(quoting Award ¶ 155 & n.158).  On this basis, Ferrand argues that the Arbitrator left unresolved

an issue submitted to arbitration—Ferrand's request for costs from the first arbitration—and that

remand is necessary to decide that issue.  *Id.* at 20–21.  Mystique responds that the Arbitrator

clearly "denie[d] Ferrand's claim for costs," Award ¶ 157(f), given her determination that

Mystique, not Ferrand, was the prevailing party, leaving nothing further to be arbitrated or

resolved.  The Court again holds with Mystique.

"[A]n arbitration award, to be final, must resolve all the issues submitted to arbitration,

and . . . must resolve them definitively enough so that the rights and obligations of the two

parties, with respect to the issues submitted, do not stand in need of further adjudication."

*Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998); *see*

*Bailey Shipping Ltd. v. Am. Bureau of Shipping*, No. 12 Civ. 5959 (KPF), 2014 WL 1282504,

at *3 (S.D.N.Y. Mar. 28, 2014) ("Generally, to be final and definite, an arbitration award must

fully determine each issue so that no further proceedings are necessary to finalize the parties'

obligations under the award." (citation omitted)).  As to ambiguity, "the well-settled rule in this

Circuit [is] that when asked to confirm an ambiguous award, the district court should instead

remand to the arbitrators for clarification."  *Gen. Re Life Corp. v. Lincoln Nat'l Life Ins. Co.*,

909 F.3d 544, 549 (2d Cir. 2018) (collecting cases).  Language in an arbitral award is ambiguous when it "is susceptible to multiple meanings."  *Id.*

The fee award here, however, is final, definite, and unambiguous.  The Arbitrator clearly found Mystique to be the prevailing party.  Award ¶ 152 ("Here, Ferrand's claim fails entirely. Consequently, Mystique is the prevailing party.").  She thus granted Mystique's claim for costs. *Id.* ¶¶ 155 ("Having considered all of the relevant factors, the Arbitrator awards Mystique $1,873,490.80 as costs in this arbitration."), 156.  And having determined that Mystique, not Ferrand, had prevailed in the arbitration, she "denie[d] Ferrand's claim for costs."  *Id.* ¶ 157(f). To resolve all doubts, the Award concluded:  "This Final Award renders a final decision on the merits of *all claims* submitted in this arbitration.  *All claims not expressly granted in this Final Award are denied*."  *Id.* ¶ 157 (emphasis added).  Those claims necessarily included Ferrand's request for fees and costs from the proceedings before the First Arbitrator, whether included in the denial of "Ferrand's claim for costs" or the subsequent catch-all denial of all claims not expressly granted.  *See* Friedberg Decl., Ex. 27 (Ferrand's costs submission, seeking costs for proceedings in "the first arbitration").

Faced with this clear statement that the Award denied its application for costs rather than leaving that application unresolved, Ferrand seizes on a footnote that it contends muddies the waters.  After stating that she would award Mystique $1.87 million "as costs in this arbitration," the Arbitrator added, in a footnote, that "[t]he Arbitrator therefore does not need to address the issue of whether Ferrand would be entitled to its fees and costs in the First Arbitration."  Award ¶ 155 n.158.  Ferrand contends that this footnote conflicts with the Award's later statement that "[a]ll claims not expressly granted in this Final Award are denied," *id.* ¶ 157, and creates an "internal contradiction" requiring remand, Ferrand Resp. at 4.  Ferrand argues, in essence, that

the Award could not both *decline to address* and, simultaneously, *deny* Ferrand's application for costs associated with the proceedings before the First Arbitrator.  *Id.*

The overall Award, and the context in which footnote 158 appears, however, make clear the Award's bottom line: that it was consciously denying Ferrand's bid for fees and costs associated with the first arbitration.  The Award found Mystique to be the prevailing party for purposes of the award of fees, and awarded it all of its requested fees and costs.  These were associated only with the post-bankruptcy portion of the proceedings between Ferrand and Mystique.  Award ¶¶ 146–47, 155.  The Award necessarily found Ferrand *not* to be the prevailing party for purposes of its fee decision, and explicitly denied Ferrand's request for costs and fees in its entirety.  *Id.* ¶ 157(f).  In light of that clear ruling, the Award's arguably infelicitous formulation that the "arbitrator does not need to address" fees and costs associated with the first arbitration is best read to mean merely that the Arbitrator need not address that issue *specifically*, given her more general determination that Ferrand, as a non-prevailing party, was not entitled to fees or costs *at all*.  Put differently, even if the Award's reasoning in footnote 158 is unhelpfully opaque, its ruling on the parties' fee requests is explicit and clear.

The Award thus does not leave any issue unresolved or unclear.  It granted Mystique's request for costs and fees in its entirety, and it denied Ferrand's, also in its entirety.  This case thus is a far cry from those that Ferrand cites, in which the Award's bottom line, or the parties' obligations going forward, were left ambiguous.[7]  Nor is the Court "unable to discern how to

---

[7] *See York Rsch. Corp. v. Landgarten*, 927 F.2d 119, 123 (2d Cir. 1991) (court "unable to determine whether the arbitrators intended the word 'expenses' to include attorneys' fees"); *Bell Aerospace Co. Div. of Textron v. Local 516, Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW)*, 500 F.2d 921, 922, 924–25 (2d Cir. 1974) (award assigned same work to different unions, and district court found language of award to be "contradictory," but declined to remand); *ConocoPhillips Gulf of Paria B.V. v. Corporacion Venezolana Del*

enforce" the Award.  *Three Bros. Trading*, 2019 WL 3456631, at *3 (citation omitted).  Under

the Award, Mystique may recover all of its fees and costs and Ferrand may recover none of its

own, whether these were incurred between 2010 and 2013 (before the First Arbitrator) or

after 2017 (before the Arbitrator).  The Court accordingly denies Ferrand's petition to vacate or

remand the Award on the ground that it was non-final, indefinite, or ambiguous.

Accordingly, Ferrand has not shown that any aspect of the Award should be vacated for

any reason.  And Mystique, for its part, has met its burden of proving the absence of any genuine

dispute of material fact precluding confirmation of all portions of the Award.  The Arbitrator's

decision resolves all claims submitted to arbitration, and does so with substantially more than the

"barely colorable justification for the outcome reached" that the law requires.  *D.H. Blair & Co.*,

462 F.3d at 110; *see L'Objet, LLC v. Ltd.*, No. 11 Civ. 3856 (LBS), 2011 WL 4528297, at *3

(S.D.N.Y. Sept. 29, 2011) ("Due to the parallel natures of a motion to vacate and a motion to

confirm an arbitration award, denying the former implies granting the latter").  Thus, the Court

denies Ferrand's petition to vacate the award, and grants Mystique's petition to confirm the

Award.

B.    **Motion for Sanctions**

Mystique pursues sanctions against Ferrand based on both 28 U.S.C. § 1927 and Federal

Rule of Civil Procedure 11.

---

*Petroleo, S.A.*, No. 19 Civ. 7304 (LGS), 2020 WL 4699056, at *2–3 (S.D.N.Y. Aug. 13, 2020)
(award ambiguous where it failed to specify whether interest rate was simple or compound);
*Three Bros. Trading, LLC v. Generex Biotechnology Corp.*, No. 18 Civ. 11585 (KPF), 2019
WL 3456631, at *4 (S.D.N.Y. July 31, 2019) (award ambiguous where court identified three
possible meanings).

1. **Applicable Legal Principles**

  *a. Sanctions Under 28 U.S.C. § 1927*

Section 1927 authorizes courts to require an attorney "who so multiplies the proceedings in any case unreasonable and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "To impose sanctions under [§ 1927], 'a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay.'" *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018) (quoting *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000)). "A court may infer bad faith when a party undertakes frivolous actions that are 'completely without merit.'" *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 55 (2d Cir. 2018) (quoting *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 116 (2d Cir. 2000).

  The Second Circuit also has imposed procedural requirements that there be notice of a motion for such sanctions and an opportunity to be heard. *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009). The party facing possible sanctions must be notified of (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered. *Id.* As to the opportunity to be heard, depending on the circumstances, "a full evidentiary hearing is not required[, and] the opportunity to respond by brief or oral argument may suffice." *Id.*

  *b. Sanctions Under Rule 11*

Federal Rule of Civil Procedure 11 gives a district court authority to sanction a litigant or its counsel. It provides, in relevant part:

By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

>> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

>> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

>> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonable based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

Rule 11(c)(2) sets forth the procedure to be followed where counsel pursues sanctions based on the offending attorney's court submissions. Rule 11(c)(2) creates a "safe harbor" that gives the offending attorney a chance to modify or withdraw the challenged submission to avoid sanctions. *See In re Pennie & Edmonds LLP*, 323 F.3d 86, 89–90 (2d Cir. 2003). Under that provision, a motion for sanctions is first to be served only on the offending attorney, and is not filed with the Court. A motion for sanctions may be filed with the Court only if, 21 days after such service, the challenged submission has not been "withdrawn or appropriately corrected," and it "must be made separately from any other motion." Fed. R. Civ. P. 11(c)(2). Sanctions may not be awarded under Rule 11(c)(2) where the party seeking sanctions failed to provide proper notice and the requisite opportunity to withdraw or correct the challenged filing, *see Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 158 (2d Cir. 2010), or where a party fails to comply with the procedural requirement that a motion for sanctions be made separately from

other motions, *see Banfield v. UHS Home Attendants, Inc.*, No. 96 Civ. 4850 (JFK), 1997 WL 342422, at *3 (S.D.N.Y. June 23, 1997).

When such a motion is properly filed, the Court may impose sanctions if the offending attorney responsible for the submission is found to have acted with "objective unreasonableness." *In re Pennie & Edmonds LLP*, 323 F.3d at 90; *see Simon DeBartolo Grp., LP v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 166 (2d Cir. 1999) ("Rule 11(b)(2) establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments."). When a party's legal contentions are challenged as violating Rule 11, "[t]he operative question is whether the argument is frivolous, *i.e.*, the legal position has no chance of success, and there is no reasonable argument to extend, modify, or reverse the law as it stands." *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) (citation omitted).

The Second Circuit has further advised that "[d]ue process requires that courts provide notice and opportunity to be heard before imposing any kind of sanctions." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999) (emphasis in original) (citation omitted). The notice requirement, at a minimum, "mandates that the subject of a sanctions motion be informed of (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense." *Id.* The moving party's Rule 11 motion papers can satisfy the notice requirement and an opportunity to submit written briefs in opposition to a Rule 11 motion can constitute a sufficient opportunity to be heard. *See Margo v. Weiss*, 213 F.3d 55, 64 (2d Cir. 2000); *Schlaifer Nance & Co.*, 194 F.3d at 335. Although the Second Circuit favors oral argument on Rule 11 sanctions motions, the district court is not obliged to hold a hearing where none has been requested. *Margo*, 213 F.3d at 64.

### 2.    Application

Mystique identifies three ostensible grounds for sanctions under § 1927: that (1) Ferrand's challenge to the Arbitrator's interpretations of the agreement is "simply impermissible under well-settled law"; (2)  Ferrand articulates a legally unavailable ground for vacatur of an award—"manifest disregard of the procedural history of the arbitration"; and (3) Ferrand misstates facts by claiming that there was only one, not two arbitrations, that both Mystique and Ferrand lost on their claims, and that Mystique improperly engineered the replacement of the First Arbitrator with the Arbitrator through its "bad faith bankruptcy filing."  Mystique Arb. Mem. at 25; Mystique Arb. Reply at 4–10.

In moving for sanctions under Rule 11, it similarly argues that Ferrand's legal theories are precluded by clear and unambiguous precedent, *see* Mystique Rule 11 Mem. at 14–19, and that its factual allegations are unsupported, *id.* at 20–21; *see also* Mystique Rule 11 Reply.

Although the question is close, the Court does not find sanctions warranted under either § 1927 or Rule 11.

As to sanctions under § 1927, even assuming that Ferrand's challenges to the award of fees were so errant as to lack a colorable basis, the Court is unpersuaded that Ferrand has acted in bad faith.  Mystique does not identify any improper purpose, such as harassment or delay, animating Ferrand to so litigate.  Instead, Mystique emphasizes Ferrand's alleged "misrepresentations, coupled with frivolous litigation."  Mystique Arb. Reply at 2.

The Court, however, does not find that Ferrand has made factual misrepresentations in these proceedings.  Whether the parties' arbitration proceedings are most aptly depicted as a singular proceeding, or two proceedings, is a matter on which reasonable minds can differ.  On one hand, as Mystique notes, the arbitrations bore distinct case numbers and were separated by several years because Mystique's bankruptcy had triggered an automatic stay and Ferrand had

allowed the first proceeding to lapse by failing to respond to the ICDR's messages.  On the other hand, the proceedings concerned identical operative facts and largely the same legal claims, and the Arbitrator carefully ensured that she picked up where the First Arbitrator had left matters in 2013.  *See, e.g.*, Award ¶ 35; Friedberg Decl., Ex. 20.  Thus, although it is correct, as a formal matter, that the proceedings were distinct, the latter was, in significant respects, a continuation of the former.  And as to these fundamental facts, Ferrand was forthright: it disclosed to the Court that the ICDR held the first arbitration in abeyance, closed its file, and allowed Ferrand to reopen proceedings only upon the filing of a new fee.  Ferrand Pet. ¶¶ 17–18; *see also* ICDR Email at 1.  Ferrand's gloss on these events was therefore not sufficiently misleading to give rise to an inference of bad faith.

Ferrand's statement that both Mystique and Ferrand lost on their claims for damages, when considering the full scope of their dispute, is also not wrong.  Again, Ferrand correctly recited in its petition that the First Arbitrator, in 2012, dismissed all of Mystique's claims against it.  *See* Ferrand Pet. ¶ 14.  Ferrand also acknowledged that the Arbitrator later dismissed its own claims.  *Id.* ¶ 24.  Nor was it a misrepresentation for Ferrand to state that the Arbitrator denied Mystique's counterclaims.  The Arbitrator indeed found it "unnecessary to address" those claims because they were, at that point, "the same as its affirmative defenses," Award ¶ 144, and then held—as Mystique elsewhere emphasizes—that "[a]ll claims not expressly granted in this Final Award are denied," *id.* ¶ 157.  Considering the facts that the Award nowhere granted judgment to Mystique on its counterclaims, did not award it the nominal damages it sought in connection with them, *id.* ¶ 144 n.156, and denied all claims not expressly granted, *id.* ¶ 157, Ferrand's statement that Mystique did not prevail on its counterclaims was a fair representation.

Last, Ferrand's statement that Mystique blocked reappointment of the First Arbitrator in 2017 is also not demonstrably untruthful.  Although the ICDR had indicated that the First Arbitrator was no longer associated with the proceeding, *see* First Havalic Decl., Ex. G, it also told Mystique and Ferrand that, if they both consented, he might be reappointed, *see* ICDR Email at 1.  Ferrand appears to have so consented, *see* Abitbol Decl., Ex. 32, but Mystique refused to do so, *see id.*, Ex. 33 ("Mystique will not consent to using [the First Arbitrator] as an arbitrator.").  The ICDR's indication that the First Arbitrator was not *currently* associated with the arbitration did not foreclose his potential *future* reappointment.  Ferrand's statement that Mystique blocked that reappointment by withholding its consent was thus fair comment.[8]

In sum, Mystique's claim of factual misrepresentations by Ferrand generally take issue with characterizations of facts that were known, and that it accurately disclosed, to the Court.  Those allegations thus do not give rise to any inference of bad faith.

To the extent Mystique accuses Ferrand of bad faith on account of having made frivolous arguments, the Court does not so find.  Ferrand's arguments clear the level of frivolity, albeit by a narrow margin.  To be sure, Ferrand's arguments fail—resoundingly.  The FAA sets a high bar for those seeking to vacate an arbitral award, and Ferrand's challenges to the Award do not seriously contend with the FAA's stringent standards.  Ferrand instead challenges the decision by the Arbitrator—that Mystique was the prevailing party—as if that decision were suitable here for *de novo* review.  The daunting standard set by the FAA for judicial review dooms Ferrand's bid to disturb that decision.

---

[8] Ferrand's accusation in its reply brief that Mystique "engineer[ed]" the arbitrator's replacement through its "bad faith bankruptcy filing"—while overheated and, as to intentions attendant to the bankruptcy filing, conjectural—did not materially mislead the Court.  *See* Ferrand Resp. at 1.

At the same time, the fact pattern as to which the Arbitrator was asked to make a prevailing-party determination was genuinely idiosyncratic. Over the course of a 10-year, two-arbitration dispute that Mystique originally launched, both parties' claims—each of which sought many millions of dollars—were denied in their entirety. Neither party recovered any sum from the other save the nearly $2 million fee award Mystique obtained by virtue of the Arbitrator's prevailing-party determination. That decision, although firmly within the Arbitrator's broad authority and not in manifest disregard of any term of the parties' agreement, easily could have come out differently, including by finding neither party to have prevailed. That the Arbitrator marshalled scant reasoning for some of her conclusions, and arguably gave insufficient attention to some aspects of the dispute, *see, e.g.*, Award ¶¶ 152, 155 & n.158, understandably informed Ferrand's assessment that the Award might be held legally vulnerable—as it could well have been had the Award been reviewed *de novo*.

In the end, the Court does not have the legal charter to second-guess the Arbitrator's application of the prevailing-party provision to the quirky facts here. That assessment "holds, however good, bad, or ugly." *Oxford Health Plans*, 569 U.S. at 573 (affirming arbitral award). But the unusual context in which the prevailing-party question arose, in the Court's view, makes Ferrand's challenge to the Arbitrator's ruling, while meritless, non-frivolous. *See Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) ("When divining the point at which an argument turns from merely losing to losing *and* sanctionable, . . . we have instructed district courts to resolve all doubts in favor of the signer." (alteration in original) (citation omitted)). Given the peculiar fact pattern presented and the considerable arguments favoring a different outcome, the Court cannot say that Ferrand's bid to vacate the Award was "objectively

unreasonable," so as support a finding that it was frivolous or indicative of bad faith.  *In re Pennie & Edmonds LLP*, 323 F.3d at 90.

Accordingly, the Court denies Mystique's motion for sanctions under § 1927.  And, having found Ferrand's petition non-frivolous under § 1927, the Court finds similarly under Rule 11, and denies Mystique's bid under that Rule, too.  *See Fishoff*, 634 F.3d at 654 ("The operative question [under Rule 11] is whether the argument is frivolous.").

### C.      Motion for a Preliminary Injunction

Ferrand's pending motion for a preliminary injunction seeks to prevent Mystique's actions in France from functionally preempting—or compromising—this Court's authority to decide whether to confirm or vacate the Award.  *See, e.g.*, Ferrand PI Mem. at 1.  The Court has now determined, however, that the Award merits confirmation.  Ferrand's application for preliminary relief is thus moot.  And because Mystique's conduct in France—aimed at attaching assets to enable it to enforce and collect on the Award—is fully consistent with the confirmation of the Award, there would, in any event, be no basis to enjoin these efforts, as Ferrand's application is premised on the infirmity of the award.  *See* Dkt. 44 at 3 (denying Ferrand's application for a TRO in light of Ferrand's inability to demonstrate a likelihood of success on, or close questions going to, the merits).

Accordingly, the Court denies Ferrand's application for a preliminary injunction.

### CONCLUSION

For the foregoing reasons, the Court (1) denies Ferrand's motion to vacate the Award; (2) grants Mystique's cross-motion to confirm the Award; (3) denies Mystique's bid for sanctions under 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 11; and (4) denies as moot Ferrand's motion for a preliminary injunction.

Mystique is directed to submit to the Court a proposed order of judgment by January 25, 2021.

The Clerk of Court is respectfully directed to terminate the motions pending at dockets 4, 17, and 31.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: January 13, 2021
    New York, New York